## Texas and Pacific Railway Company et al. v. W. R. Felker.

### Decided November 18, 1905.

**1.—Deposition—Officer's Name Across Seal.**

Where the officer's name, endorsed upon an envelope containing depositions, extended across and over that portion of the envelope which contains the mucilage forming the seal, it was a sufficient compliance with the statute which required the officer's name to be across the seal.

**2.—Damage to Cattle During Transportation—Cause of Injury—Opinion of Witness.**

In a suit for damage to cattle during transportation witnesses were asked "if from their experience in handling cattle they could tell whether or not the condition of the cattle at their destination was brought about by improper transportation and handling the cars, or from other causes," and having answered in the affirmative, were then asked "what was the cause," to which they replied "it was due to improper transportation and handling on the cars, and from being detained too long on the cars, and being jerked and switched about improperly." Held, the objections of defendant that it was not a proper question for expert testimony, that the question and answer called for a conclusion of the witness and that the facts sought to be proved by the question and answer were exclusively for the jury, should have been sustained.

**3.—Market Value—Competent Witness.**

Even though a witness had not seen the cattle in question before their arrival at destination he may testify, if otherwise qualified, as to their market value at destination if they had been shipped with reasonable dispatch and care.

**4.—Through Bill of Lading—Refusal of Agent to Issue.**

It is error to admit testimony of the refusal of defendant's agent to issue a bill of lading to a point beyond defendant's line where it appeared that said agent had no authority to issue such bill.

**5.—Connecting Carrier—Place of Delivery.**

Where a shipment of cattle is to be delivered by one carrier to a connecting carrier and certain pens are used by the two roads for that purpose a shipper has no right to require that said cattle be unloaded in other pens than those used for said purpose.

**6.—Insufficient Pens—Damage to Cattle—Termination of Liability.**

A carrier is liable for damage to cattle resulting from a crowded condition of its unloading pens, and this liability continues until the cattle are delivered or tendered to a connecting carrier.

**7.—Rush of Business no Defense.**

A rush of business is no defense for failure to transport freight or cattle with reasonable care, diligence and dispatch. Only the act of God or other vis major can excuse a carrier from compliance with its contract.

Appeal from the District Court of Mitchell County. Tried below before Hon. James L. Shepherd.

*J. M. Wagstaff*, for appellants.—It was purely a question of fact for the jury to determine what caused the damages to the cattle and it was improper for the court to permit the witnesses to testify that improper transportation was the cause of the bad condition of the cattle on their arrival at Henryetta, I. T. Trinity & Sabine Ry. v. Lane, 79 Texas,

646; Haynie v. Baylor, 18 Texas, 509; Gulf, C. & S. F. Ry. v. White, 32 S. W. Rep., 322.

The conversation in reference to billing the cattle, between the defendant's agent and the plaintiff, being immaterial and calculated to prejudice the jury against the defendant it was error for the court to permit the conversation to be offered in evidence. St. Louis, I. M. & S. Ry. v. Carlisle, 78 S. W. Rep., 553.

The appellants having only contracted to deliver the stock to the appellee at Fort Worth, Texas, its liability ceased when the cattle were delivered to him at Union Stock Yards, Fort Worth.

*Ed. J. Hamner,* for appellee.—That part of article 2286 (2231) of the Revised Statutes regulating the transmission of depositions by mail is directory, and a substantial compliance with its directions is sufficient, there being nothing to raise a presumption of fraud. Garner v. Cleveland, 35 Texas, 77.

In Anderson v. Rogge, 28 S. W. Rep., 106, citing C. T. & N. W. Ry. v. Hancock, 2 U. C., 301, it was held that the receipt of the postmaster need not state the name of the postoffice.

In Railway v. Hancock, supra, it was held that the endorsement of "P. M." was sufficient.

In Ballard v. Perry, 28 Texas, 348, it was held that the endorsement need not be dated.

In Greenwood v. Woodward, 18 Texas, 2, it was held that if the endorsement was made by a clerk instead of the postmaster, or a deputy postmaster, it was sufficient.

The statutes of States providing for the taking of depositions are remedial and should be liberally construed. Moran v. Green, 21 N. J. Law, 562.

In McKenzie v. Barnes, 12 Rich. Law (S. C.), 205, where there was no suspicion of unfairness it was held a sufficient compliance with the statute requiring commissioners taking testimony to write their names across the seals of the envelopes, for the commissioners to write their names across the face of the envelope, the seals being on the other side.

In Burleson v. Burleson, 28 Texas, 411, the name of the notary was written partly on the upper leaf and partly on the body of the envelope, and there was a space between the letters forming the name, it appearing that the name was written across the seal before the envelope was sealed, and this was held sufficient.

Where witnesses have qualified as experts in the handling of cattle, and have stated from their experience that they could tell whether or not the condition of the cattle at a given time was brought about by improper transportation of the cattle or occurring from other causes, they should be permitted to give their opinion as to the cause of the bad condition of the cattle. San Antonio & A. P. R. R. v. Barnett, 66 S. W. Rep., 477; 17 Cyc., pp. 99, 100, 1187; Ft. Worth & D. C. R. R. v. Wilson, 24 S. W. Rep., 688, and authorities there cited; 1 Greenleaf on Evidence, sec. 441; Gulf, C. & S. F. v. Wright, 21 S. W. Rep., 81; Galveston, H. & S. A. R. R. v. Wesch, 85 Texas, 600; Chicago, R. I. & T. R. R. v. Holsell, 9 Texas Ct. Rep., 942; Gulf, C. & S. F. R. R. v. Leatherwood, 69 S. W. Rep., 122.

It is not necessary for a witness to see the cattle at the time of shipment in order to testify as to their market value at their point of destination. San Antonio & A. P. R. R. v. Barnett, 66 S. W., 477; Smith v. Indianapolis & St. L. R. R., 80 Ind., 233, and authorities therein cited; International & G. N. R. R. v. Dimmit Co., 23 S. W. Rep., 755; St. Louis S. W. R. R. v. Barnes, 72 S. W. Rep., 1041.

J. L. Pennington being the general live stock agent of appellants, and having agreed with appellee to ship his cattle out at a given time, and having been in the habit of making such contracts with appellees and others theretofore, which had been carried out by appellants, it was not necessary for appellee to prove his authority to make the contract in question, same having been specially pleaded and no denial of the authority to make the contract having been made in appellant's answer. International & G. N. R. R. v. True, 57 S. W. Rep., 977; Missouri, K. & T. Ry. v. Kyser, 87 S. W. Rep., 389.

Where a railroad accepts live stock for shipment it can not excuse itself from liability for injuries resulting from delay in transportation, upon the ground that there was an unusual rush of business on its road. The volume of business offered to or accepted by a common carrier can not avail to relieve it from the performance of a contract already entered into. International & G. N. R. R. v. Anderson, 21 S. W. Rep., 692; Gulf, C. & S. F. R. R. v. McAulay, 26 S. W. Rep., 476; International & G. N. R. R. v. Lewis, 23 S. W. Rep., 324; Gulf, C. & S. F. R. R. v. Hume, 24 S. W. Rep., 915; Gulf, C. & S. F. R. R. v. McCorquodale, 71 Texas, 41; Texas & Pac. R. R. v. Nicholson, 61 Texas, 495; Cross v. McFaden, 20 S. W. Rep., 847.

There was no error in admitting proof that at the inception of the shipment appellees demanded a through billing. Inman v. St. Louis S. W. R. R., 37 S. W. Rep., 37; San Antonio & A. P. R. R. v. Stribling, 12 Texas Ct. Rep., 201.

Though by common consent of railroad companies, where cattle are to be changed from one road to another, it is customary to deliver same to a stock yards company, yet a delivery by the initial carrier to such stock yards company is not a delivery to a connecting line so as to relieve the initial carrier of its duty to take care of the stock until actually delivered to the connecting carrier. Texas & Pac. R. R. v. Scharbauer, 52 S. W. Rep., 590; Texas & N. O. R. R. v. Gulf & I. R. R., 54 S. W. Rep., 1031; Same case, 56 S. W. Rep., 328; Gulf, C. & S. F. R. R. v. Eddins, 26 S. W. Rep., 161; Louisville & N. R. R. v. Farmers' & D. Co., 52 S. W. Rep., 972.

If a carrier deviates from the route contemplated by the contract, it becomes an insurer of the cattle, and can not avail itself of any exemption made in its behalf in the contract. Galveston, H. & H. R. R. v. Allison, 59 Texas, 198; Texas & Pac. R. R. v. Boggs, 40 S. W. Rep., 20; Missouri, K. & T. R. R. v. Liebold, 55 S. W. Rep., 369; Gulf, C. & S. F. R. R. v. Irvine, 7 Texas Ct. Rep., 374; Express Co. v. Kountz, 75 U. S., 342; Railroad v. Thompson, 4 Texas Ct. Rep., 323; Fatman v. Railroad, 2 Disney (Ohio), 248; Constable v. National Steamship Co., 154 U. S., 51; St. Louis, I. M. & S. R. R. v. Bland, 34 S. W. Rep., 675; 6 Cyc., p. 396, sec. E, note 88; 6 Cyc., p. 384, note 50; 6 Cyc., p. 383, notes 47-48.

SPEER, Associate Justice.—Appellee as plaintiff below sued the appellants Texas & Pacific Railway Company, St. Louis & San Francisco and Texas Railway Company, and the St. Louis & San Francisco Railway Company, to recover damages for delay in the transportation and rough handling of a train of cattle from Iatan, Texas, to Henryetta, Indian Territory. The defendants answered by general denial and specially pleaded that the contracts were in writing and that each had limited its liability to its own line of road, and that the cattle were poor and weak and not fit for shipment, and that the damages, if any, to the cattle grew out of their weak and bad condition rather than any negligence upon the part of defendants. A trial resulted in a verdict and judgment against each of the defendants, from which they have appealed.

The envelope containing the depositions of the witnesses Smith and Warner bore the following endorsement: "Received this package on the 4th day of November, 1904, from the hands of E. T. McDowell, the officer before whom they were taken, and forwarded the same on the 4th day of November, 1904, by due course of mail as directed. R. H. Jenness, P. M., per Shick, postmaster at Okmulgee, Indian Territory." A motion was duly made to quash the depositions upon the ground that the postmaster's receipt was not in compliance with article 2286 of the Revised Statutes, and for the further reason that the officer before whom the answers were made had not written his name across the seal as required by article 2284 of the statutes. The only proposition submitted under the assignment calling in review the action of the court in refusing to quash the depositions, presents the sole question of the failure of the notary to write his name across the seal of the envelope, and we would be authorized to consider no other question. But we do not think either objection is well taken; the receipt quoted purports upon its face to be the "postmaster's" receipt within the meaning of the statute. The notary's name endorsed upon the envelope, while it does not extend literally across the edge of the lap or cover forming the seal, yet does extend across and over that portion of the cover which contains the mucilage forming the seal and is therefore, we think, literally "across the seal" as required by statute.

Upon the trial a number of witnesses were asked "if from their experience in handling cattle they could tell whether or not the condition of the cattle at the time they arrived at Henryetta, Indian Territory, was brought about by improper transportation and handling the cars or from other causes," and having answered the question in the affirmative were then asked "what was the cause of the bad condition of the cattle on arrival at Henryetta," to which they answered that "it was due to improper transportation and handling on the cars and from being detained too long on the cars and being jerked and switched about improperly." Appellants duly objected to this testimony for the reasons that it was not a proper question for expert testimony, and that the question and answer called for a conclusion of the witness, and that the facts sought to be proved by the question and answer were exclusively for the jury. The objections were overruled and the answers of the witnesses admitted. In this ruling there was error; the objections were well taken and should have been sustained. It is proper in such case to permit the witness to testify as to the appearance and condition of the

cattle and, if qualified, to further express his opinion as to whether or not rough handling, delays and the like are calculated to produce such effects; but to allow a witness to testify that the appearance of the cattle indicates improper transportation and handling on the cars is tantamount to allowing him to testify that the carrier was negligent—the question of negligence being always one for the jury. We believe no case can be cited where it is held that a witness may testify that an act does or does not constitute negligence.

There was no error in admitting the testimony of witnesses Warner and Smith as to the market value of the cattle at their destination if they had been shipped with reasonable dispatch and care, even though they had not seen the cattle prior to shipment. This circumstance might properly affect the weight of the testimony, but hardly its admissibility.

The testimony of the witness Thompson complained of in the Texas & Pacific Railway Company's fifth and sixth assignments, if erroneously admitted, would not work a reversal of the case, since the same testimony was admitted from another source without objection. But in view of another trial we suggest that it was improper to permit the witness to testify that when the cattle were delivered to the Texas & Pacific at Iatan he requested and demanded of the agent that he bill the cattle through to their destination in the Indian Territory and that the agent refused to do so stating that he could only bill the cattle to Fort Worth, Texas. Clearly the appellee had no right to insist that the cattle be billed through to the Indian Territory, and the refusal of the Texas & Pacific to do so is not a proper subject for consideration by the jury. Such testimony could only have an evil effect as indicating an unwillingness upon the part of the company to accommodate the shipper.

We think it is also improper to permit the witness to testify that at the time he delivered the cattle at Iatan he demanded of the agent that they be unloaded in the Texas & Pacific stock pens at Fort Worth rather than at the Union Stock Yards, since all the evidence indicates that the cattle were destined to a point beyond Fort Worth and were to be delivered by the Texas & Pacific to its connecting carrier the St. Louis, San Francisco & Texas Railway Company, and the only place at which this delivery could be made was the Union Stock Yards where the cattle were actually unloaded. Of course if the shipment had been purely a local shipment to Fort Worth, the shipper might have the right to demand that the delivery be made in the yards of the Texas & Pacific Company. But he would have no right to insist upon such delivery and at the same time further insist that the Texas & Pacific Company also deliver the cattle to its connecting carrier when it could not do so from its own stock yards.

The Union Stock Yards at Fort Worth being, according to the evidence, the pens used jointly by the appellants, it follows that they were the pens of the Texas & Pacific for delivery of cattle in such shipments as this, and it was therefore not error to permit evidence to the effect that when the cattle were placed there, the pens were crowded to such an extent that the cattle were unable to eat or drink and were thereby seriously injured. The Texas & Pacific Company would be liable for the

damages up to the time the cattle were delivered or tendered to the proper connection, at which time the latter's liability would attach.

The fourth section of the court's charge which is as follows, is also erroneous: "If you believe from the evidence in this case that before the arrival of the cattle in question at Fort Worth station, the consignee requested that said cattle be delivered to him there in the Texas & Pacific pens at that place, but the said Texas & Pacific Railway Company refused so to do and carried them five miles distance from the place to which they were destined and placed them in the Union Stock Yards pens at North Fort Worth, Texas, such placing in said last named pens would not be a delivery according to said contract, and said Texas & Pacific Railway Company would be liable for whatever damages might have resulted to said cattle (if anything) from the time of such deviation from the destination named in the contract, and which may have resulted (if anything) by placing them in the Union Stock Yards pens aforesaid, and until the acceptance of said cattle by the next connecting carrier, the Red River, Texas & Southern Railway Company." As already stated, the Texas & Pacific Company could not comply with its obligation to deliver to its connecting carrier except by a delivery at the Union Stock Yards, and it is highly improper for the court to instruct the jury that this delivery would constitute a violation of its contract. The Texas & Pacific Company would not be liable for all the damages that might have resulted to said cattle by their delivery in the Union Stock Yards and prior to their acceptance by the connecting carrier, as the jury were told by the court, but at most could only be held liable for such damages as were occasioned by its negligence in unloading them in the crowded or otherwise improper pens, or delaying unnecessarily to tender them to the connecting carrier, and only then of course where there is proper predicate in the pleading. We hardly think, as suggested by counsel for the Texas & Pacific, that the duty devolved upon the appellee to avoid the consequences growing out of improper conditions at the pens after the delivery of the cattle there. This was the place selected by the company to make the delivery and it is under the obligation of exercising ordinary care to maintain it in a suitable condition for such purposes.

This disposes of all the issues raised by the assignments of the Texas & Pacific Railway Company and most of those raised by the other appellants. With respect to the sixth assignment of error of the St. Louis & San Francisco Railway with reference to the testimony of Thompson detailing a conversation with J. L. Pennington, the companies' live stock agent, we find no error. There is ample testimony in the record to show that it was at least within the scope of the authority of Pennington to transact the business with appellee in which he was engaged when he made the statements reproduced by the witness in the trial of this case. Pecos V. R. R. Co. v. Latham, 13 Texas Ct. Rep., 662; Missouri, K. & T. Ry. Co. v. Kyser, 87 S. W. Rep., 389; International & G. N. R. R. Co. v. True, 57 S. W. Rep., 977.)

The court's charge given at the instance of appellee that "A rush of business is no defense for failure to transport freight or cattle with reasonable care, diligence and dispatch," is the law as we understand it.

(Gulf, C. & S. F. Ry. Co. v. McCorquodale, 71 Texas, 41; Cross v. McFaden, 20 S. W. Rep., 846; International & G. N. R. R. Co. v. Anderson, 21 S. W. Rep., 691; International & G. N. R. R. Co. v. Lewis, 23 S. W. Rep., 323; Gulf, C. & S. F. Ry. Co. v. Hume, 24 S. W. Rep., 915.) Nothing but the act of God or other *vis major* could excuse the carrier from a compliance with the terms of a contract entered into. The rule announced in Texas and Pacific Railway Company v. Nelson, 86 S. W. Rep., 616, a case of negligent failure to furnish cars, has no application to this case.

The errors discussed affecting, as they do, all of the appellants, the judgment of the District Court is reversed and the cause remanded for another trial.

*Reversed and remanded.*