## AMERICAN RY. EXP. CO. v. HOME STAR PRODUCE CO.  (No. 11243.)*

(Court of Civil Appeals of Texas. Fort Worth. July 1, 1925. Rehearing Denied Oct. 24, 1925.)

1. **Carriers ⬅119, 120—To exonerate carrier from liability for loss from act of God or inherent character of goods, no concurring negligence of carrier must be shown.**

To exonerate carrier for loss occasioned by act of God, or inherent character of goods, which is an exception to general rule holding carrier liable for loss occasioned from failure to seasonably deliver goods committed to it, it must appear that there was no concurring negligence on part of carrier.

2. **Carriers ⬅134—Evidence held to show no error in refusing new trial on ground that act of God was proximate cause of injury.**

In suit for failure to deliver produce under evidence showing that train was delayed five days by act of God, but that railway permitted produce to spoil during delay, it was not error to refuse a peremptory instruction for defendant or a new trial, on ground that act of God causing delay was proximate cause of injury, since carrier was under duty to exercise due care to preserve produce which, if done, would have permitted its delivery.

3. **Carriers ⬅132—Where shipment delayed by act of God, carrier has burden of showing due care in preserving shipment during delay.**

In suit for failure to deliver shipment, where defense was act of God preventing delivery, burden is on carrier to show that it exercised due care in preserving and handling shipment while delayed.

4. **Carriers ⬅133—Evidence as to number of days delayed produce could stand without rotting relevant.**

In suit for failure to deliver produce, and for injuries while delayed five days in shipment, testimony of a packer as to number of days particular kinds of produce could stand without rotting was pertinent and relevant.

5. **Carriers ⬅134—Evidence that agent did all he knew how to preserve produce delayed in shipment does not necessarily show exercise of due care by carrier.**

Where a shipment of produce was delayed by act of God, evidence showing that defendant's agent did all he knew how to preserve produce does not necessarily show due care on part of carrier, where it appeared that agent, who knew nothing of value of produce, communicated with officers of carrier, who failed to send instructions, and it appeared that some act could have been taken to save produce.

6. **Carriers ⬅131—Allegations of defendant's failure to act not erroneous on ground that carrier not required to so act as matter of law.**

In suit for failure to deliver produce and injury to it while delayed by act of God, allegations that company failed to notify shipper, to procure retransportation, or to make extra efforts to preserve shipment, were not errors on ground that no duty rested on carrier to do such things as a matter of law, since they might be considered in determining whether defendant exercised due care.

7. **Trial ⬅350(6)—Failure to submit specific issues on question whether loss to produce delayed by act of God was due to its inherent character held not error.**

In suit for damages for injury to produce while delayed by act of God, failure to submit specific issues on question whether loss was occasioned by inherent character of produce was not error, where there was no evidence to show that this was proximate cause of loss, and jury found defendant's negligence to be proximate cause of loss, thus negatively finding that loss was not occasioned by inherent quality, unmixed with defendant's negligence, and since burden was on defendant to show what part of produce was lost by reason of inherent character.

8. **Trial ⬅350(6)—Issues as to defendant's negligence, and whether it was proximate cause of loss, held sufficient without issues evidentiary in character.**

In suit for failure to deliver produce and injury during delay, issue submitted to jury as to whether defendant was negligent, and whether such negligence was proximate cause of damage sufficiently embodied issues made by pleadings constituting ultimate issue of suit, and issues concerning ordinary care, reasonable value, delay, etc., need not have been charged, since they were evidentiary.

9. **Trial ⬅352(4)—Issues submitted not objectionable as failing to be restricted to particular acts of negligence alleged, where allegations surplusage.**

In suit for failure to deliver produce and injury during delay, issues submitted to jury as to whether defendant was negligent in delivering shipment and whether such negligence was proximate cause of damage were not objectionable as failing to be restricted to particular acts of negligence alleged, since in such action burden of proof was on defendant to free itself from negligence, making plaintiff's allegations surplusage.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction December 10, 1925.

**10. Carriers ⊙137—Charge that, where loss results from concurring causes, no one of them is remote, but all are proximate, held proper.**

In suit for failure to deliver produce and injury from negligence during delay caused by act of God, charge that, where loss actually results from concurring causes, no one of them is remote, but all are proximate, is not reversible; error under circumstances showing defendant's handling of produce together with delay was proximate cause of injury.

**11. Carriers ⊙133—Evidence of market value of produce at next station from point of delay properly admitted under the circumstances.**

In suit for failure to deliver produce and injury from negligence during delay, admission of evidence of market value at next station from point of delay, was not error, since it showed that injured produce at point of delay brought much less than at point testified to, and could be considered with facts showing that agent at point of delay and officers of defendant company made no effort to ascertain reasonable value, and other evidence showing defendant company to be guilty of negligence in handling produce.

**12. Appeal and error ⊙1053(5)—Evidence admitted, though irrelevant, not reversible error, where no issue of negligence on it was submitted.**

In suit for failure to deliver and injury from negligence during delay, evidence that a train left from next station prior to train on which shipments were made, though irrelevant, was not reversible error, since no issue of negligence in this respect was submitted.

Error from Tarrant County Court; P. W. Seward, Judge.

Suit by the Home Star Produce Company against the American Railway Express Company. Judgment for plaintiff, and defendant assigns error. Affirmed.

Thompson, Barwise & Wharton, of Fort Worth, for plaintiff in error.

Alfred H. Eaton, of Fort Worth, for defendant in error.

CONNER, C. J. This suit was instituted by the appellee, Home Star Produce Company, a partnership, against appellant, American Railway Express Company, to recover damages in the amount of $525 for failure to deliver a number of shipments of produce to various points west of Fort Worth, Tex. Appellant denied liability, pleading that the failure to deliver was the proximate result of an unprecedented storm, amounting to an act of God, occurring along the lines of the Texas & Pacific Railway Company west of Fort Worth en route of shipment. It was alleged that, in consequence of said storm, the train on which appellee's shipments were carried was marooned for a period of 5 days at Aledo, Tex., a small town of approximately 500 population, some 15 miles west of Fort Worth. Appellee's shipments consisted of produce such as onions, beets, carrots, let-

tuce, bananas, spinach, grape fruit, oranges, etc. Appellant pleaded that during the time this produce was marooned at Aledo its agent in charge of the express car exercised ordinary care in handling the shipment, but that the same began to spoil and decay, and portions thereof were sold from time to time for their reasonable value under the circumstances in question; that such portions of the shipments as were not sold were carried on to destination and there thrown away as worthless.

Appellant tendered into court the sum of $49.50, representing the amount received by it from sales at Aledo. Appellant further pleaded that plaintiff's loss was caused by the unprecedented flood, and by the inherent nature and quality of the shipments, which were subject to quick deterioration and decay.

The appellee pleaded that the handling of the shipments by appellant at Aledo was negligent. alleging that appellant should have sold the more perishable part of the shipments before same decayed, and should not have sold the less perishable parts of the shipments at all. The appellee further pleaded that appellant should have notified it of the delay at Aledo, so that appellee could have sold the shipments without sustaining any loss, and further that, if the shipments had not been sold, they could have been returned to the shippers and forwarded to destination without any loss or damage whatever.

It is undisputed that appellant received from appellee on April 24, 1922, a number of shipments of produce in good order for transportation to points west of Fort Worth, and that the shipments were never delivered at destination. It was also shown that an extraordinary and unprecedented rainfall occurred, commencing about 10:19 p. m. on April 24, 1922, from which time until 5 a. m. April 25th, a period of 6½ hours, a total precipitation of 8.56 inches of rain was recorded in the local weather bureau at Fort Worth. It was agreed that the storm in question was unprecedented and amounted to an act of God in the eyes of the law, which the defendant could not, under the circumstances, have reasonably foreseen or anticipated.

The court gave to the jury definitions of the terms "proximate cause," "negligence," "ordinary care," and submitted the following issues:

"No. 1. Was the flood of April 24 to 29, 1922, unexpected, extraordinary, and unprecedented in the history of Aledo, Tex., and vicinity? Ans. Yes.

"No. 2. Was the flood in question the sole proximate cause of the damage complained of by plaintiff? Ans. No.

"No. 3. Was the defendant, American Railway Express Company, negligent in the care and

handling of the shipment in question after the same arrived at Aledo, Tex.? Ans. Yes.

"No. 4. Was the negligence of the defendant, if negligence you find, the proximate cause of the damage claimed to the shipment in question? Ans. Yes.

"No. 5. Did the negligence of the defendant, in caring for and handling the shipment in question after it arrived at Aledo, Tex., if any you have found, concur with the flood of April 24 to 29, 1922, to cause the damage complained of by plaintiff? Ans. Yes.

"No. 6. What amount, if any, do you find that the plaintiff was damaged, if it was, by reason of such concurrent negligence of the defendant, if any you have found? Ans. $436."

The court further charged the jury that the burden was on the defendant to show by a preponderance of the evidence that questions 1 and 2 should be answered in the affirmative, and upon the plaintiff to show by a preponderance of the evidence that questions 3, 4, and 5 should be answered in the affirmative, and the amount of damages, if any.

Upon the verdict of the jury as above indicated, the court entered judgment for the plaintiff in the sum of $436, and the defendant has appealed.

[1] As a general rule a carrier such as appellant is under the absolute duty of seasonably delivering goods committed to it for transportation, and a failure to so deliver renders the carrier liable for all loss occasioned thereby. To this general rule, however, there are certain exceptions, among which occurrences such as the one pleaded in this case, to wit, an unprecedented storm which could not have been reasonably anticipated and provided against. See T. & P. Ry. Co. v. Felker, 40 Tex. Civ. App. 604, 90 S. W. 530, I. & G. N. Ry. Co. v. Halloren, 53 Tex. 46, 37 Am. Rep. 744, and many other cases that might be cited. But, in order to exonerate a carrier from liability for loss occasioned by occurrences that may be classed as acts of God, or of the inherent character of the goods, it must appear that there was no concurring negligence on the part of the carrier. See G., C. & S. F. Ry. Co. v. Boyce, 39 Tex. Civ. App. 195, 87 S. W. 395. The foundation of the rule that the act of God excuses the failure to discharge a duty is the maxim, "Lex neminem cogit impossibilia." If by the use of reasonable care, prudence, and diligence, under the circumstances of a particular case, it is possible to discharge the duty, then those circumstances do not constitute a valid excuse for a failure to perform it. Nothing less than a fortuitous gathering of circumstances preventing the performance of a duty as could not have been foreseen or overcome by the exercise of reasonable prudence, care, and diligence, constitutes an act of God which will excuse the discharge of the duty. G., C. & S. F. Ry. Co. v. Boyce, 39 Tex. Civ. App. 195, 87 S. W. 395.

As applicable to this case, we make the following quotation from the opinion of our Commission of Appeals in the case of Cleburne Peanut & Products Co. v. M., K. & T. Ry. Co., 221 S. W. 270:

"The rule in this state is that the carrier must bring itself fully within the exception, not merely by showing the damage resulted from the inherent defect of the goods, but by going further and showing that it exercised ordinary care to avoid the damage. In other words, the carrier has the burden of showing that it was free from any negligence contributing to the damage. Ryan & Co. v. M., K. & T. Ry. Co., 65 Tex. 13, 57 Am. Rep. 589; Mo. Pac. Ry. Co. v. China Mfg. Co., 79 Tex. 26, 14 S. W. 785."

[2, 3] With the rules in mind so stated, we think the court committed no error in refusing to give a peremptory instruction in appellant's favor, or in refusing a new trial on the ground, as urged, that the evidence without dispute showed that the loss occasioned the appellee in this case was proximately caused by an act of God, and that there was no negligence on the part of the company in failing to properly care for the produce in question during its detention in the town of Aledo. The evidence has been carefully considered, and, in substance it is to the effect that the storm pleaded by appellant in defense was as agreed, an unprecedented one, which washed out portions of the railway track on both sides of Aledo, so as to necessitate a delay of some 5 days at that point. At the expiration of 5 days the train proceeded, and deliveries could have been made at the several points to which they had been shipped had the produce been preserved. It is clear that the unprecedented rain was not the direct cause of appellee's loss; it merely brought about the condition causing delay, and, had the suit been for damages occasioned by delay only, the defense would have been perfect. But the loss complained of in this case was not because of the delay, but for an entire failure to deliver. Had the produce been kept in good condition, it could and would have been delivered, notwithstanding the great rain. It was certainly the duty of the company to exercise due care to preserve the produce while in its possession. It will be noted that the court in his charge placed the burden of proof upon the plaintiff to show that there was negligence on the part of the appellant company in the care and handling of the shipment in question after the same arrived at Aledo, and the case seems to have been tried upon that theory and is presented here in briefs of the parties as if such was the proper rule. But the rule is otherwise, as is to be noted by the authorities we have already cited. The burden was upon the appellant to excuse itself by showing that it had exercised due care and was without negligence in the handling the shipments while at Aledo.

[4] J. D. Johnson, a packer for the plaintiff company, testified that:

"In a closed car, at an ordinary temperature, vegetables like those shipped will hold up every bit of a week and longer than that; that is, before they begin to decay. Lemons will hold up 10 days usually under the same circumstances. Of course you may find one or two bad lemons in a box after 10 days—maybe 4 days. Pepper will hold up about 5 days; squash will hold up a week; cabbages about 8 or 9 days; grape fruit about a week; apples 8 or 9 days; oranges about the same as apples; new spuds a couple or three weeks."

[5] Appellant assigns error to the introduction of this testimony, but we think it was pertinent and relevant, and no other testimony upon the same subject has been pointed out as contradicting this witness' statement. The evidence relied upon by appellant as showing due care while the produce in question was in its possession at Aledo is to the effect that the agent at that point was unable to secure ice at Aledo, that he each day moved the boxes around so as to give them air, and that he sold some of the produce so as to avoid loss, etc. It may be conceded that the agent at that place did all that he knew how to do in order to preserve the produce, and yet it does not follow that due care on the part of the company was exercised. The duty of due care devolved upon the appellant company, and there was evidence tending to show that the agent was without any knowledge of the value of the produce sold by him; that the sales made were for much less than the value of the produce sold. As one witness expressed it, it was sold for a "song." It further appears that the agent communicated with appellant's agent at Weatherford and also with superior officers at Fort Worth, and that such officers gave no instructions to the Aledo agent how to proceed or at what price the produce should be sold, or whether in fact it should be sold at all. It appears that no ice was procurable at Aledo, and that there was no market price for the produce at that place, but it does appear that the temperature is not generally high at that time of the year, and that at least one load of ice had been taken from Weatherford to Aledo by the Weatherford agent, and there is no evidence which shows that ice might not have been secured in Fort Worth; nor does the evidence show that it would have been impracticable to have retransported the produce by trucks to Fort Worth, some 15 miles distant, at which place the produce could have been re-routed or sold or redelivered to the appellee without loss. We feel unable to say, after a consideration of all of the evidence, that the verdict of the jury, to the effect that the appellant was guilty of negligence in handling the shipments at Aledo, is unsupported.

[6] Vigorous complaint is made in behalf of appellant of an allegation in plaintiff's petition to the effect that the railway company failed to notify the shipper, and that counsel for appellee in argument stressed such fact, and that one of the jurors, in the deliberations of the jury, gave weight to the fact that no notice was given to the shipper of the delay at Aledo, but we see no reversible error in any of these particulars. While it cannot be said that, as a matter of law, a duty rested upon the appellant to notify the shipper or to procure retransportation to Fort Worth, or to make extra effort to procure ice, or to give instructions, which, if followed, would have preserved the produce in question during the 5 days it was detained at Aledo, yet it was its duty to exercise due care to preserve the produce, if it could have been done, and a failure to do the things suggested was proper for the consideration of the jury in determining the ultimate question of whether the company exercised the care it should have done and was free from negligence.

[7] Appellant also insists that the loss in question was occasioned by the inherent vice or character of the produce to deteriorate and become worthless, and complaint is made of the failure of the court to submit special issues soliciting findings as to whether such contentions were true, and, if not all, then what part of the loss was so occasioned. The jury found that the unprecedented rain or act of God was not the sole cause of appellee's loss, and further found, in effect, that appellant's negligence in the care of the shipments in question at Aledo was the proximate cause of the loss, thus negatively at least presenting a finding that it was not occasioned by the inherent quality of the produce, unmixed with negligence on the part of appellant. Such fact will, ordinarily of course, not be an answer to the question, but it undoubtedly appears that all of the produce was not such as was lost because of its character for deterioration. It was shown by the testimony of at least one witness who brought part of the produce (potatoes) back to Fort Worth and sold them on the market there, and which he testified were not injured, and which he further testified he bought for a "song." There was no evidence pointed out, and in our investigation we have found none, that enables us, or that would have enabled the jury, to say or to find what part or proportion of the loss, if any, of the shipment in question was proximately caused by the inherent vice or quality of the shipment. It is true the agent at Aledo testified that some of the strawberries were moulded on top, a few black spots appeared on some of the oranges, etc., but just how many crates were so affected, or just what part, if not the whole, of these or other crates of produce were so lost, is not shown, nor does there appear to have been any attempt to so show, so that we cannot say the court committed reversible error in failing to sub-

mit to the jury the issue of whether the appellee's loss was proximately caused by the inherent vice or character of the produce shipped. The burden was on appellant, not only to show that some of the produce was of an inherent quality which proximately caused its loss under the circumstances, without any contributing negligence on appellant's part, but also to show by a preponderance of the evidence what part, if less than the whole, was so lost. Otherwise there can be no reasonable basis for a jury finding a judgment in appellant's favor on this issue.

[8, 9] Appellant contends, under its twelfth and thirteenth propositions, that the court's special issues 3 and 4 are objectionable on the ground that they are not separate but involve a number of issues, such as whether ordinary care was exercised in the sale of the produce, and whether the reasonable value of the shipments was received, or whether the defendant delayed the sale of the shipments until the same were decayed, and whether the shipments that were ultimately carried to destination were worthless, etc.; and, if such facts constituted negligence, then whether or not they were the proximate cause of plaintiff's loss. But we think the charges sufficiently embodied the issues made by the pleadings. The real or ultimate issue was whether appellant was guilty of negligence in its care of the shipment while at Aledo, and, if so, whether such negligence constituted the proximate cause of plaintiff's damage, and the questions which it is contended should have been embodied in the charge were, as we think, evidentiary in character. There may be and often is a conflict in the testimony relating to a given fact which is relevant and competent proof in favor of or against the ultimate issues, but issues of this character are not required to be submitted in a charge. Issues 3 and 4 are further objected to on the ground that they are not restricted to the particular acts of negligence alleged by the plaintiff. It is true in the plaintiff's petition it sought to point out a number of particulars in which it was charged the appellant company was negligent in the care of the produce, but we think these allegations were in truth surplusage, for, as before observed, the burden of proof was upon the defendant to free itself from negligence and not upon the plaintiff to establish negligence in any particular. This case is not therefore, one that falls within the rule that a plaintiff must be restricted to the acts of negligence alleged. Plaintiff's action here was for a failure to deliver its produce as consigned, and was not based upon the acts and omissions occurring at Aledo. The plaintiff's cause of action was established by the showing that its produce was not delivered as consigned, and the fail-

ure of appellant to show that the sole proximate cause of such failure was the act of God or the inherent vice of the goods as it pleaded.

[10] In appellant's fourteenth proposition, exception is made to the court's charge, to the effect that, where a loss actually results, from concurring causes, no one of them is remote, but all are proximate. As applied to the facts of this case, we find no reversible error in this charge. See Butterick Pub. Co. v. G., C. & S. F. Ry. Co., 39 Tex. Civ. App. 640, 88 S. W. 299.

[11] Error is urged to the evidence offered of the market value of the produce in question in Fort Worth. It is to be remembered that appellant's defense is that its agent at Aledo exercised due care in the sale of parts of the produce. As already observed, the evidence tended to show that the produce sold brought very much less in value than uninjured produce was worth on the market at Fort Worth. At least some of the produce sold was in an uninjured condition, and we think the evidence was admissible as a circumstance to be taken in connection with the circumstance that it does not appear that either the agent at Aledo or any one of his superior officers made any effort to ascertain what was the reasonable value of the produce the agent was offering to sell, and considered in connection with the further circumstance that no effort was made on the part of any of appellant's agents or employés to either themselves secure trucks and reconvey the produce to Fort Worth, or to notify the shippers that they might so retransport the produce, and other circumstances relevant to the issue whether the appellant company was guilty of negligence in its handling of the produce at Aledo.

[12] There is a further objection to the evidence to the effect that a train left Fort Worth prior to the train on which the shipments in fact were made. While we think this evidence was irrelevant, we cannot think its introduction is cause for reversal of the judgment. No issue of negligence in this respect was submitted, nor does the evidence go further than to show the mere facts stated. No effort was apparently made to show that the produce in question was delivered to the appellant company at an hour which required it, in the exercise of ordinary care, to ship the produce in question on the train, or that, had the produce in fact been shipped on that train, it would have escaped delay and been enabled to fully complete deliveries as contemplated by the plaintiff consignments.

We conclude that all assignments and propositions should be overruled, and the judgment affirmed.