## Texas & Pacific Railway Company v. J. C. Avery.

Decided July 2, 1898.

**1. Carriers—Oral and Written Contract of Shipment.**

A railroad company whose agent has orally, and without limitation of its common law liability, contracted to transport cattle at a specified rate per car, on the faith of which agreement the cattle are loaded on the cars, can not, as a condition of transporting the cattle, afterwards require the shipper to execute a written contract increasing the price of the cars and diminishing the carrier's liability.

**2. Same—Contract Invalid—Consideration—Duress.**

Such a written contract, executed by the shipper when the train was ready to start with the cattle, and because the railroad agent refused to transport them until it was signed, is without consideration and void because executed under duress.

**3. Same—Proof of No Consideration.**

Where, as against a written contract of shipment improperly exacted by the carrier, the shipper proves that the consideration expressed therein was wanting, this is sufficient, unless the carrier proves a different or additional consideration, and the words "and other considerations" recited in the contract are immaterial.

**4. Same—Free Pass Not Consideration, When.**

A common carrier can not claim that a written shipping contract, demanded of the shipper after loading his cattle on its cars under an oral contract, is binding on the shipper because there was included as part of such contract a free pass over the road with the cattle, where the shipper was required by the contract, in consideration of such free pass, to have charge of loading, unloading, watering, and feeding the cattle, and otherwise discharging the duties of the carrier toward them.

Appeal from Parker. Tried below before Hon. J. W. Patterson.

*Bidwell & Stennis,* for appellant.

*S. H. Cowan* and *G. W. Walthal,* for appellee.

HUNTER, Associate Justice.—This suit was brought in the District Court of Parker County by appellee against appellant to recover

damages for injury to 158 head of cattle shipped from Monahans, Texas, to Paoli, Indian Territory. It is alleged that appellee made an oral contract with appellant's agent at Monahans to the effect that he would deliver to it on the 6th day of May, 1892, 158 head of cattle to be shipped at $65 per standard car to Paoli, I. T., and the agent agreed to have the cars there and ready for prompt shipment on said day, and receive and ship said cattle at said price to said point; that appellant had a traffic arrangement with the Gulf, Colorado & Santa Fe Railway Company, whereby the two companies would transport the cattle for said price; that he drove his cattle to Monahans on the morning of the 6th, and appellant failed to receive and load said cattle until in the afternoon of the 7th, and the cost to him of holding said cattle was $50, and that his said cattle were compelled to do without sufficient food and water during said time, and were much weakened thereby and damaged $50; that on the way to Fort Worth they were neglected and not fed and watered, and no opportunity was given appellee to feed and water them, and the train was delayed and they were injured on the way and at Fort Worth by standing on the tracks without unloading, feeding, or watering, so that six died, worth $20 per head, and the rest were weakened, bruised, and injured and damaged $3 per head. Appellee also claimed an overcharge on the cars of $60, and the penalty of $500 for failing to feed and water the cattle, under article 284, Revised Statutes of Texas.

Appellant pleaded the general issue, and also set up the usual live stock shipping contract, which was signed by appellee, and in which there was a clause that all damages which had accrued to the cattle prior to the signing thereof were waived and released, and also that, in consideration of the reduced rate at which the cattle were being shipped, the company was not to be liable, in effect, for damages for any cause except negligence, and that appellee at his own expense agreed to feed and water said stock on the way and load and unload the same, and the company was not to be liable for any loss or damage occurring thereto while the stock were in charge of appellee.

On the back of the contract was printed, as part thereof, the following: "We, the undersigned persons in charge of the live stock mentioned in the within contract, in consideration of the free pass granted us by the Texas & Pacific Railway Company and of the other covenants and agreements contained in said contract, including the rules and regulations printed on the back hereof, all of which for the considerations aforesaid are hereby accepted by us and made a part of this our contract, and all the terms and conditions of which we hereby agree to observe and be severally bound by, do hereby expressly agree that during the time we are in charge of said stock, and while we are on our return passage, we shall be deemed employes of said railway company for the purposes in said contract stated, and that we agree to assume, and do hereby assume, all risks incident to such employment, and that said railway company shall in no case be liable to us for any injury or damage sus-

tained by us during such time for which it would not be liable to its regular employes." This was signed by appellee and W. P. Burchfield.

By supplemental petition the plaintiff pleaded want of consideration for the execution of this contract, and also that the same was signed under duress, in that after the stock were loaded on the cars the agent of appellant refused to ship the cattle unless appellee signed the contract, and he was thus compelled to sign same to get his cattle shipped.

The jury found the following verdict: "We the jury find for plaintiff damages and expenses before the cattle were received and loaded $74.20, and damages to the cattle after they were received and loaded $453, and for overcharges on cars $27.30, and for cattle killed $114, and interest at 6 per cent on above $220, and as penalty $250."

The penalty of $250 was remitted by appellee, and this appeal is taken from the judgment on the other items of the verdict.

The evidence proves that appellee made the contract for the cars and for the shipment of his cattle as pleaded by him, and that he tendered the 158 head of cattle to appellant on the morning of May 6, 1892, and that the cars were not furnished and cattle loaded until 7:30 p. m. of May 7. When appellee ordered the cars he specified 3C or 4C New England cattle cars, and the price agreed on was $65 per standard car. It seems from some of the evidence that cattlemen consider 33 feet a standard cattle car, while railroad men consider 30 feet to 30 feet and 6 inches a standard car. After the cattle were loaded on the cars and the train had moved from the stock pens up in front of the depot, the printed shipping contract aforesaid was signed, which provides for $72.05 for 33-foot cars and $74 for 33-foot 6-inch cars. When appellee came to sign the contract he objected to a written clause in the contract describing his cattle as being poor and weak and in bad shipping condition. After some parleying, however, the agent said "he could not and would not ship the cattle if he did not sign the contracts." Appellee then signed without reading the contract, and got on the train and it left for Fort Worth with the cattle.

The train was delayed at Big Springs six hours, at Iatan tank thirty-seven minutes, at Baird fifty minutes, and arrived at Fort Worth at about 11:20 p. m., May 8th, where the train was switched off on a side track and stood until about 7:30 a. m. of the 9th, when the cattle were unloaded at the Union Stock Yards, in North Fort Worth, having been in the cars without unloading for thirty-six hours, without water for about forty-eight hours, and without food for about seventy-two hours. Upon the arrival of the train at Fort Worth the appellant tendered the cattle to the Gulf, Colorado & Santa Fe Railway Company to be carried to the Union Stock Yards that night, but the latter company refused to receive them except upon account of appellant, and did not receive them at all until about 7:30 next morning, the 9th. The evidence tends to prove that the cattle were badly injured and damaged when the Gulf, Colorado & Santa Fe Railway Company received them. It also tends to prove that the delay in receiving the cattle at Monahans and the one at

Big Springs were occasioned by washouts on the road east of Big Springs. The court correctly charged the jury on the issue as to damages before loading on the cars at Monahans, and as to the item of overcharge for cars, and as to the damages to the cattle resulting from delays and from failure to feed and water on the way to Fort Worth, but also charged them that if the written contract put in evidence by defendant railway company was valid, that is, based upon a consideration, and not obtained by duress, then they could not find for the plaintiff on any of said issues unless, in case of the latter item, the defendant failed to give the plaintiff an opportunity to feed and water on the way. The court then, we think, sufficiently and correctly charged the jury on the plaintiff's plea of want of consideration in the shipping contract set up by defendant, and on the plea that it was signed by plaintiff under duress. We therefore conclude that all the special charges asked by appellant were properly refused.

The verdict of the jury, we think, shows that they concluded either that the shipping contract was executed without consideration or under duress or both, and we think the evidence was sufficient to support both conclusions. The plaintiff proved that he made an oral contract with appellant's agent to transport his cattle from Monahans to Paoli by way of Fort Worth and over the Gulf, Colorado & Santa Fe Railway, at $65 per standard car, and under this agreement and understanding they were delivered to the company and loaded on the cars. The company became bound from that moment to transport the cattle with care, diligence, and dispatch, and without any unreasonable delays, at the price agreed on, and to unload them "for rest, water, and feeding" every twenty-eight hours while on the way and in its custody, as required by the Revised Statutes of the United States, section 4386, and failing in which it was responsible for the damages resulting from such failure.

The printed shipping contract which the appellant required the appellee to sign stipulated for the payment of $72.05 for 33-foot cars and $74 for 33-foot 6-inch cars. The evidence is conflicting as to the length of a standard stock car. Appellant's evidence shows that it is 30 feet to 30 feet 6 inches long, while appellee's evidence is that 33 feet is a standard stock car, as all cattlemen understand. It matters not, however, which is correct. The contract was for $65 a standard car, and these cars were furnished under that contract and the cattle loaded on them upon the faith of that agreement, and the company had no right afterwards to change the cars agreed on or the price without at least notifying appellee of the difference in price and obtaining his assent to the use of higher priced cars. The printed contract which was prepared by appellant expresses, in effect, that the consideration for the same was the "reduced rate" at which appellant agreed therein to transport the cattle, "and other considerations." It would have sounded more like the truth if it had read "increased rate." At all events, as the appellee proved that the cattle were received by the appellant under an oral contract to carry them for $65 a standard car, and be subject to all the common law

and statutory liabilities, a written contract which demanded the same or a higher rate, and besides placed all risks of the shipment and all the labor and burden of loading and unloading and feeding and watering on the shipper, to be performed at his expense, clearly established a want of consideration to support the latter contract. It is enough to prove that the consideration *expressed* in the contract was wanting, unless the party relying thereon proved a different or additional one. Hence the words "and other considerations" cut no figure here.

The evidence also warranted a finding by the jury that the contract was signed and executed under duress. See the very able and exhaustive opinion of Chief Justice Fisher of the Third District in the case of Railway v. Carter, 29 Southwestern Reporter, 565, and the authorities he there cites.

It is, however, seriously urged by appellant that the shipping contract is binding upon appellee, because he necessarily accepted it in using it as a "free pass" over the road going with the cattle and returning on appellant's trains. But in consideration of this "free pass" the contract above expressly required appellee to assume the labor and expense of loading and unloading, feeding and watering, and otherwise discharging all the duties of attending to said cattle while in transit, which otherwise would have devolved on appellant, and also to assume all risks incident to such employment, waiving all right to damage for injuries which might be received by him, and agreeing that appellant should not be liable to him for any injury sustained for which it would not be liable to its regular employes. It seems to us that such a paper is a "free pass" in name only. Had not appellee and his men been carried for the service rendered the carrier, it must have both hired and carried other men to render it. The above quotation from the contract seems to class and treat them as servants of appellant.

All the assignments of error in appellant's brief are overruled, as being without merit, the most important of which (in fact, nearly all of which) are answered by the views herein expressed.

The judgment is therefore in all things affirmed.

*Affirmed.*

Tarlton, Chief Justice, did not sit in this case.

Writ of error refused.