PECOS & N. T. RY. CO. v. STINSON.
(No. 858.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 4, 1915. Rehearing Denied Jan. 12, 1916.)

1. COMMERCE ⬦⇒35—INTERSTATE COMMERCE—WHAT CONSTITUTES.

Where plaintiff, a resident of Texas, drove his cattle across the state line and loaded them into pens in New Mexico for shipment to a point in the state of Texas, the shipment constituted interstate commerce, though the station of the defendant railroad company was located in Texas.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 23, 26, 89; Dec. Dig. ⬦⇒35.

For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. CARRIERS ⬦⇒207—CARRIAGE OF LIVE STOCK—ORAL CONTRACTS.

Damages are recoverable against a railroad company for breach of a verbal contract to furnish cars for the shipment of live stock on a day certain, though a bill of lading is subsequently executed.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 129–239; Dec. Dig. ⬦⇒207.]

3. CARRIERS ⬦⇒207 — CARRIAGE OF LIVE STOCK—AUTHORITY OF AGENT.

A local agent has authority to make a verbal contract binding his company to furnish cars for the transportation of cattle on a day certain.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 129–239; Dec. Dig. ⬦⇒207.]

4. CARRIERS ⬦⇒207—CARRIAGE OF LIVE STOCK—BILLS OF LADING—ISSUANCE.

Where, after a carrier had breached its verbal contract to furnish cars for the transportation of cattle, the shipper without any additional consideration signed a bill of lading the terms of which he did not read or understand, waiving any claims for failure to provide cars in time, the stipulation is not binding on the shipper.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 129–239; Dec. Dig. ⬦⇒207.]

5. CARRIERS ⬦⇒207—CARRIAGE OF LIVE STOCK—BILLS OF LADING.

That a carrier of live stock furnished free transportation to the shipper as a caretaker is not consideration rendering binding a contract contained in a subsequently signed bill of lading waiving damages for failure to furnish cars as orally agreed.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 129–239; Dec. Dig. ⬦⇒207.]

Appeal from Potter County Court; T. W. McBride, Judge.

Action by J. D. Stinson against the Pecos & Northern Texas Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Madden, Trulove, Ryburn & Pipkin, of Amarillo, and Terry, Cavin & Mills, of Galveston, for appellant. Boyce & Davidson, of Amarillo, for appellee.

HALL, J. Appellee, as the shipper of cattle, sued appellant and the Panhandle & Santa Fé Railway Company, as carriers, to recover $336 damages alleged to have been sustained as the result of delay in furnish-

---

ing cars and transporting 170 head of cattle from Farwell, Tex., to Amarillo, Tex. A trial before a jury resulted in a verdict and judgment in favor of plaintiff for the sum of $278.40, with interest at 6 per cent. Plaintiff alleges, in substance, that about November 14, 1913, he was the owner of 130 cattle, located near Farwell, in Parmer county, Tex., which he desired to ship from the said town to Amarillo over the line of the defendant railway; that on said date he orally requested the agent of the defendant at Farwell to furnish him three cars to be at Farwell ready for loading on the morning of November 15th; that the agent of the defendant orally promised and agreed to furnish said cars as requested; that on November 15, 1913, he was the owner of about 40 head of cattle, in addition to those just mentioned located near Farwell, which he also desired to ship to Amarillo; that on said last-named date he ordered one additional car through the agent of the defendant at Farwell, who promised and agreed to have said car at Farwell on said date; that all his cattle were delivered into the pens of the defendant on November 15, 1913, ready for loading; that the defendant became bound to furnish said cars on the dates aforesaid, and by the use of ordinary care could have furnished them for loading at said time; that plaintiff paid the freight charges, but that defendant failed and refused to furnish the cars as agreed, and did not so furnish them until about noon of November 16, 1913; that by reason of the defendant's default the plaintiff was compelled to hold his cattle in the pens from November 15 until about noon of November 16, 1913. The petition complains further of delay in transit, but since he testified upon the trial that he made no claim for shrinkage while the cattle were on the cars, but based his claim for damage accruing while the cattle were in the pens, the issue of damages while in transit is eliminated and will not be considered.

In addition to general and special demurrers and special denials, the defendant, by special plea, set up, among others, the following defenses: That the local agent at Farwell was without authority to contract to furnish the cars within a particular time, but had authority only to agree to furnish same within a reasonable time, upon a reasonable request; that defendant was not tendered inspection certificates on the cattle tendered for shipment until the day upon which the cattle were actually shipped, and that defendant could not receive the cattle for transportation until the inspection was furnished, all of which the plaintiff knew; that the shipment was forwarded as soon as plaintiff furnished the necessary inspection certificates; that defendant exercised ordinary care to furnish the cars within a reasonable time after the requests were made; that the shipment was not sufficient

to justify defendant in handling it by special train, all of which plaintiff knew, and that the cars were furnished and the transportation accomplished within a reasonable time, considering the duty of the defendant to the public generally; that defendant notified plaintiff not to bring his cattle in until notified that the cars were ready; that, contrary to said request, plaintiff brought his cattle in, and, if they were, in fact, deprived of feed, water and rest by being confined in the pens, it was due to plaintiff's negligence, and that this was the proximate cause of the alleged damages; that said cattle thereafter fully recovered, if they were, in fact, damaged, since they were not shipped to market, and that the only shrinkage suffered was that ordinarily incident to shipping from one range to another; that at the time of making said shipment plaintiff entered into a written contract, dated at Farwell, Tex., November 15, 1913, providing, among other things, that all prior understandings as to furnishing cars were merged into said written contract, all of which was well known to plaintiff, the said provision being in defendant's standard form live stock contract, and being reasonable, and plaintiff knowing beforehand that he would be requested to sign such contract; that he did execute it of his own free will; that he is estopped to claim that an agreement was made to furnish him cars within any particular time, or for shipment on any particular date, or that he was damaged by reason of the alleged failure to furnish said cars on the dates named.

By supplemental petition plaintiff, among other facts, alleged that the provisions in said shipping contract were unreasonable and against public policy, and an attempt on the part of defendant to absolve itself from liability for their negligence; that they were without consideration and void.

By supplemental answer appellant alleged that the shipping contract had a consideration, which was the free transportation furnished appellee as a caretaker for said cattle.

[1] It appears from the uncontradicted testimony that the stock pens into which appellee drove his cattle and from which they were loaded onto the cars are over the state line and in New Mexico. Although the bill of lading was executed on the Texas side of the boundary line between Texas and New Mexico, we incline to the opinion that the loading of the cattle onto cars spotted at the pens in New Mexico and their subsequent transportation across the line into Texas constitutes an interstate shipment, and that the rights of the parties to this suit should be determined under the federal laws, and particularly under the Carmack Amendment to the Hepburn Bill. The bill of lading might have been signed and the shipping contract made in Amarillo or at any other point along the line of defendant's railway. The ship-

ment itself actually moved from New Mexico into Texas, which, in our opinion, determines its nature as being interstate. I. C. R. R. Co. v. Feuentes, 263 U. S. 157, 35 Sup. Ct. 275, 59 L. Ed. 517. The cause, however, seems to have been tried in the court below and briefed in this court as an intrastate shipment, and the issues presented here will be considered accordingly.

[2-4] The first question presented by appellant's brief is the right of plaintiff to bind appellees by an oral contract of shipment, when a written contract was subsequently signed, limiting the carrier's liability. Appellant insists that because plaintiff actually shipped his cattle a day after the oral contract was entered into, executing a bill of lading, which he admits it was the custom to execute, and which he expected to execute, limits plaintiff's right of recovery by the stipulations therein contained. Appellant further insists that the verbal contract was merged in the written bill of lading. The general rule that damages are recoverable against a railway company for breach of a verbal contract to furnish cars for the shipment of live stock on a day certain, regardless of the bill of lading subsequently executed, is settled law in this state. Mo., etc., Ry. Co. v. Carter, 9 Tex. Civ. App. 677, 29 S. W. 570; Texas, etc., Ry. Co. v. Nicholson, 61 Tex. 491; I. & G. N. Ry. Co. v. Young, 28 S. W. 820; Cross v. McFaden, 1 Tex. Civ. App. 461, 20 S. W. 847. Where such a contract is proven, the carrier's liability rests upon a breach thereof, and not upon its common-law liability. T. & P. Ry. Co. v. Shawnee Cotton Oil Co., 55 Tex. Civ. App. 183, 118 S. W. 776, and authorities cited.

The agent at Farwell had the authority to make the verbal contract binding his company to furnish cars upon a certain date. G., C. & S. F. Ry. Co. v. Jackson & Edwards, 99 Tex. 343, 89 S. W. 968. The injury being shown, the question for our determination is: Has the appellee waived his right to recover by signing the written bill of lading after the cattle had been loaded, which instrument provides that all prior understandings concerning the furnishing of cars were merged into it, and which expressly waives and releases all claims for damages with respect to the appellant's failure to provide cars in time? Appellee testified that he came with the stock as a caretaker; that he did not read the contract any further than to note the number of head of cattle, and that he had never read one of such contracts through in his life, according to his recollection; that when he had the agreement with the agent about furnishing the first three cars there was nothing said about his having to sign a contract; that it was not signed until after the cattle were on the cars; that it had al-

ways been the custom when he had shipped for him to sign some such an instrument; that he did not know its provisions; that there was nothing said to him about signing the contract until after the cattle was loaded, nor was any stipulation that might be in it mentioned. He further stated that the railroad company did not offer to pay him anything for the execution of the contract, stipulating that all prior oral agreements were merged into it. Under these facts, we think it is clear that the appellee was not bound by the stipulations in the written contract. Southern Pac. Ry. Co. v. Meadors, 104 Tex. 469, 140 S. W. 427; A., T. & S. F. Ry. Co. v. Grant, 6 Tex. Civ. App. 674, 26 S. W. 286; M., K. & T. Ry. Co. v. Carter, 9 Tex. Civ. App. 677, 29 S. W. 565; St. Louis, S. F. & Texas Ry. Co. v. Gilliam & Jackson, 166 S. W. 706; P. & N. T. Ry. Co. v. Evans-Snyder-Buel Co., 100 Tex. 190, 97 S. W. 466. The rule is stated in 4 R. C. L., "Carriers," § 240, p. 779, as follows:

"In order, however, that assent may be implied from the mere acceptance of a bill of lading without dissent, the instrument must be issued by the carrier, and accepted by the shipper at or before the time of shipment of the goods. If the goods have been received by the carrier under an oral or a written contract, a subsequent issuance by him of a bill of lading purporting to alter the terms of this contract in any particular cannot affect the rights of the shipper under the previous contract, in the absence of some evidence of his assent to the terms of the bill of lading other than his mere receipt of it without objection. The rule that all prior oral negotiations are deemed to be merged in a subsequent written contract is in such case plainly inapplicable. The bill of lading does not form a subsequent written contract until its terms are accepted by the shipper, and such acceptance will not be presumed merely from a failure to object to its terms. * * * But, whatever the true basis of the rule, it is well established, and the authorities are uniform in requiring that actual assent be shown to a bill of lading by which it is attempted to supersede a contract previously entered into. * * * But, if the bill of lading, as issued, contains terms variant from those previously agreed upon, no presumption of assent can arise from its receipt, even if it was the expectation of both parties when the goods were delivered that the bills of lading would be given."

[5] Appellants insist that the granting of free passage to appellee as a caretaker upon the train transporting his cattle was a sufficient consideration to support the written contract. Such is not the rule in this state. T. & P. Ry. Co. v. Avery, 19 Tex. Civ. App. 235, 46 S. W. 897.

Whether this case be considered as an interstate or an intrastate shipment, the facts entitled appellee to a judgment. S. A. & A. P. Ry. Co. v. Bracht, 172 S. W. 1116.

Several other matters deemed to be immaterial are submitted in the brief.

Finding no reversible error, the judgment is affirmed.