HUMPHREYS OIL CO. v. LILES et al.*
(No. 547–4286.)

(Commission of Appeals of Texas, Section B. Nov. 18, 1925.)

1. Pleading ⊗➾34(6) — Pleadings liberally construed when attacked after verdict.

When pleadings are attacked after verdict, a very liberal construction thereof will be indulged, so much so that every fair implication will be allowed to deduce from the actual language of the pleadings the necessary facts to support judgment.

2. Pleading ⊗➾34(1, 3)—Petition to be liberally construed as against general demurrer.

Petition is to be liberally construed as against general demurrer, and every fact supplied, that may be reasonably inferred from the language used.

3. Pleading ⊗➾433(5) — Verdict cures every defect except want of a cause of action.

A verdict cures every defect in petition except want of a cause of action.

4. Trial ⊗➾350(3)—Pleadings held sufficient to justify submission of issue of number of barrels of oil escaping.

In action for damages for conversion of oil actually impounded by plaintiffs by dams, and for damages for wrongful destruction of their established going business, whereby they lost their profits, pleadings held to justify submitting issue of number of barrels of oil which plaintiff would and could have impounded if defendant had not destroyed their dams.

5. Trial ⊗➾352(5)—Assumption in issues that plaintiff had impounded the oil in controversy held not erroneous under the evidence.

In action for damages for conversion of oil actually impounded by plaintiffs, and for wrongful destruction of their established going business, whereby they lost their profits, assumption in issues that plaintiffs had impounded the oil in controversy held not erroneous under the evidence.

6. Mines and minerals ⊗➾47—Title to abandoned oil vested in first taker who reduced same to his possession.

Oils permitted to escape from oil wells and run down creek or ravine crossing another's land were abandoned property, and title thereto would become vested in first taker who reduced same to his possession.

7. Property ⊗➾10 — Possession of personal property is dominion and control.

Generally, one has possession of personal property when it is under his dominion and subject to his control.

8. Mines and minerals ⊗➾47—Title to fugitive oil vested in plaintiffs when confined on their lands subject to their control and disposition.

Where fugitive oil running down creek or ravine was confined on plaintiffs' land by their retaining dam, subject to their future control and disposition by pumps and storage and its flow arrested, it was reduced to such possession as to vest title in plaintiffs.

9. Evidence ⊗➾20(1) — Common knowledge that frequent means of storing crude oil is in earthen tanks.

It is a matter of common knowledge that a frequent means of storing crude oil, at least temporarily, is in earthen tanks.

10. Mines and minerals ⊗➾81—Lessees not entitled to tear out dams of another to impound fugitive oil unless doing so peacefully and not going beyond necessity required.

Conceding that floating dams, erected by plaintiffs to impound fugitive oil, were a nuisance or interfered with lessees' rights, lessees had the right only, if they could do so peacefully, to abate the nuisance or remove the obstruction without resorting to court, if they went no further than necessity required, and did not commit any overt act to their individual

profit or advantage beyond proper enjoyment of their lease rights.

Error to Court of Civil Appeals of Tenth Supreme Judicial District.

Action by Mrs. Lizzie Liles and others against the Humphreys Oil Company. Judgment for plaintiffs was affirmed in the Court of Civil Appeals (262 S. W. 1058), and defendant brings error. Affirmed.

C. S. Bradley, of Groesbeck, and Vinson, Elkins, Wood & Sweeton, of Houston, for plaintiff in error.

H. B. Daviss, of Corsicana, for defendants in error.

SPEER, J. Mrs. Lizzie Liles and others sued the Humphreys Oil Company and others to recover damages for certain oil alleged to have been converted by the defendants, and for the destruction of a "pick up" station belonging to the plaintiffs, resulting in the loss of the value of other oil alleged also to have been converted by the defendants. There was a judgment in the trial court in favor of the plaintiffs in the sum of $30,690. Upon appeal by defendants the Court of Civil Appeals affirmed the judgment of the trial court. 262 S. W. 1058. The principal question presented by this writ of error is one of construction of the plaintiffs' petition. The court submitted the following issues, which were answered as shown, to wit:

"Question No. 1. How many barrels, if any, of the oil that has been heretofore impounded by plaintiffs on the Liles lease, excluding therefrom such oil, if any, as may have originated from any well or wells belonging to the Humphreys Oil Company, did the defendant Humphreys Oil Company, or its agents acting under instructions from said company, take or pump away? Answer: 5,400 barrels.

"Question No. 2. How many barrels, if any, of the oil that could and would have been impounded by the plaintiffs upon the Liles lease were caused to escape and flow down Plummer's creek by the acts of the defendant Humphreys Oil Company and its agents in removing and destroying the floating dam or dams erected on said creek by the plaintiffs for the purpose of impounding oil? Answer: 22,500 barrels.

"Question No. 3. What was the value of the oil inquired about in the two preceding questions at the same time was taken, if you find same was taken by defendant Humphreys Oil Company or at the same time was allowed to escape, if you have answered that any did escape? Answer in the aggregate. Answer: $1.-10 per barrel."

Plaintiff in error complains that the plaintiffs' pleadings did not authorize the trial court to submit issue No. 2, and this requires an examination of plaintiffs' second amended petition upon which the case was tried. No question is made but that the pleadings did authorize the submission of question No. 1, so that it will be unnecessary to consider any part of the pleadings except that which bears upon question No. 2.

This petition showed that plaintiffs Lizzie Liles and her minor son owned 144 acres of land so situated with reference to Plummer's creek that waste or fugitive oil from many hundreds of acres of the Mexia oil fields lying above and adjacent to this land drained across plaintiffs' land, and across that certain 18 acres thereof (in which the other plaintiffs owned a lease interest) whereon they had constructed certain dams or traps to impound such waste oil. It specifically alleges:

"That immediately after completing the installation of their retaining dams, storage pools, tanks, etc., for impounding waste oil and establishing their equipment for taking, pumping, and storing oil, on February 20, 1922, plaintiffs immediately began taking possession, and did take possession of waste oil coming into and upon the said 144 acres of land, and did impound and store and reduce to possession vast quantities of waste oil then within their said retaining dams and storage pools. * * * That Field Manager Harvey and the roughnecks and gangmen of the defendants, all of whom were employees and were acting as the agents of the defendants and acting under their express instruction, using all kinds of tools and implements, deliberately and with force tore away and destroyed, 15 times or more, the retaining dams which the plaintiffs continued to reconstruct upon said 144 acres of land for the purpose of reducing to possession, recovering, and storing the waste and fugitive oil that came into and upon said land, * * * and by such unlawful and wrongful acts of constantly and repeatedly tearing out and destroying plaintiffs' retaining dams the defendants have made utterly worthless this once valuable right of plaintiffs to construct and maintain dams and storage tanks for the purpose of and reducing to possession recovering and storing the waste and fugitive oil upon said 144 acres of land by so destroying and preventing plaintiffs from rebuilding said retaining dams or storage tanks. That said right to construct and maintain and operate on said 144 acres of land a system of retaining dams and dikes for reducing to possession, recovering, storing, and owning the waste oil that came from and onto said land was a very valuable right worth many thousands of dollars to the plaintiffs. That plaintiffs owned same and had possession of and were using same when defendants by the wrongful acts heretofore alleged and otherwise unlawfully deprived plaintiffs thereof and of the benefits therefrom. * * * That defendant had constructed and maintained and was operating a very large waste oil gathering-system and waste oil station with retaining dams and dikes * * * situated on the Kohlman land only a few hundred feet below down the flow of the creek from the plaintiffs' 144-acre tract of land. That defendants have another and a second system of retaining dams and pumping stations for the gathering of waste oil located just below and within a few hundred feet of this first system of retaining dams and pumping stations, so that all oil which they cause to escape out of plaintiff's 144-acre tract, if not entirely caught by and in defendants' first waste oil pumping

station, will be, and was, wholly and effectually retained, taken, and reduced to possession by and in this second system of retaining dams and pumping stations; that all the waste oil which the defendants, by the methods which they employed heretofore referred to and the methods which they otherwise employed, caused to escape from and pass in through plaintiffs' retaining dams and station, was in fact collected by the defendants' said pumping station on the Kohlman land and was converted and sold by the defendants. * * * That all waste oil coming into said 144-acre tract would flow on through it and flow onto the Kohlman tract and into the defendants' said waste oil station, to be taken up and appropriated by it. * * * That to accomplish the same purpose to deprive plaintiffs of the waste oil coming from and into and upon said 144 acres of land defendants built a line of fence across part of the said 144 acres of land, which fence in truth was none other than a useless line of posts set up so close together that oil wagons might not pass through, and served the purpose only of cutting off and obstructing plaintiffs' only outlet for marketing said waste oil, and defendants in divers other ways and by divers other means destroyed the plaintiffs' said property and the right to take possession of and use and sell the waste and fugitive oils coming from wells drilled upon said 144 acres of land, and from wells drilled upon other tracts of land and coming into and upon said 144-acre tract of land. And plaintiffs allege that said waste oil, so unlawfully and wrongfully taken from these plaintiffs by the defendants from the said 144 acres of land from March 4, 1922, to the filing of this amended petition aggregated 50,000 barrels or more, which was then and is now of a reasonable value of $75,000, and that plaintiffs are entitled to recover from the defendants in this trial the value of the said oil so unlawfully taken and appropriated by the defendants the said sum of $75,000. * * * That all waste and fugitive oil continues to flow into and upon said 144 acres of land in vast quantities. That defendants continue to maintain said dams, dikes, etc., upon said 144 acres of land, and continue to take, appropriate, and sell all said waste and fugitive oil coming into and below said lands, etc., etc. * * * Wherefore, premises considered, plaintiffs pray that upon the hearing hereof plaintiffs have judgment for said sum of $78,500," etc., etc.

[1] No exception is urged to this petition, and the attack, of course, comes after verdict. In such cases a very liberal construction of the pleadings will be indulged; so much so that every fair implication will be allowed to deduce from the actual language of the pleadings the necessary fact or facts to support the judgment. Schuster v. Frendenthal, 74 Tex. 53, 11 S. W. 1051.

[2, 3] In testing the petition upon general demurrer the rule is, a liberal construction supplying every fact that may be reasonably inferred from the language used, and even more so after verdict, is the pleading favored. A verdict cures every defect except the want of a cause of action. As we construe plaintiffs' petition, their cause of action is made up of two elements, to wit, first,

damage for conversion of oil actually impounded by them; and, second, damages for the wrongful destruction of their established going business, whereby they lost their profits. It is true the petition further alleges that the defendants actually appropriated to their own use the waste oils which escaped after the destruction of their dams, but this does not make the action in this respect one for conversion only.

[4] That the wrongful destruction of an established business resulting in the loss of profits to the owner gives rise to a cause of action cannot be denied (Galveston, etc., v. De Groff, 102 Tex. 433, 118 S. W. 134, 21 L. R. A. [N. S.] 749; American Construction Co. v. Caswell [Tex. Civ. App.] 141 S. W. 1013), and indeed that proposition is not questioned by plaintiffs in error; the insistence being that no such case is pleaded. The petition, we think, does not even require the aid of this rule of fair implication or reasonable intendment to present the issues submitted in question No. 2, but its language is entirely sufficient under any rule of construction. It sets forth the situation of plaintiffs' lands with reference to the adjacent oil fields, the numerous wells in that territory throwing off and wasting great quantities of oil, all of which drains into the creek or ravine which crosses plaintiffs' lands; that such oils were abandoned property; that plaintiff had constructed a contrivance, dam or plant, together with tanks, reservoirs, machinery, and the like, for gathering and saving such oil, and were impounding and saving great quantities daily; that defendants wrongfully tore out such dams and destroyed the "pick up" stations, permitting and causing the oil to flow by plaintiffs' lands and into the dams of the defendants, from which the same was pumped into the tanks of the defendants; that such oils thus wrongfully taken by the defendants amounted to 50,000 barrels, of the value of $75,000, for which sum plaintiffs prayed judgment.

We have no difficulty in holding this petition good as against the attack here made. It is true plaintiffs' petition alleged the amount of oils converted by defendants from above the plaintiffs' dam while the same were actually impounded to be 50,000 barrels, of the value of $75,000, and that the final prayer is for that very sum, but this does not lessen the fact that plaintiff also alleged the quantity and value of the oils which were caused to flow by their lands through the destruction of their stations to be the same. It is, of course, true that under the prayer the recovery upon both elements of damages would be limited to the amount sought. But the petition does present the element submitted in issue No. 2.

[5] Plaintiffs in error next criticize the court's issues in questions 1 and 2 upon the grounds that they were on the weight of the

evidence and assumed that the plaintiffs had impounded the oils in controversy. This assumption was justified. There seems to be no fair controversy· in the testimony but that plaintiffs had impounded the escaping oils on the surface of the ravine, and there was no occasion for submitting such question to the jury.

[6] It also appears to be undisputed that such oils were abandoned property, with the exception of that portion which belonged to the defendants as coming from their wells and this was expressly protected in issue No. 1; and no complaint as to its not being excepted in issue No. 2 is made. The oils being abandoned property, the title thereto would become vested in the first taker who reduces the same to his possession. Huggins v. Reynolds, 51 Tex. Civ. App. 504, 112 S. W. 116; Foster v. Fidelity, etc., Co., 162 Mo. App. 165, 145 S. W. 139; Kansas City, etc., Co. v. Wagand, 134 Ala. 388, 32 So. 744.

[7-9] Of course, what is possession depends upon the nature of the property claimed. Generally one has possession of personal property when it is under his dominion and subject to his control. Considering the nature of this property, we think undoubtedly this fugitive oil, when its flow was arrested and it was confined upon plaintiffs' lands by their retaining dams, subject therefore to their further control and disposition by pumps and storage, was reduced to such possession as to meet the requirements of law and vest the title in the plaintiffs. It is a matter of common knowledge that a frequent means of storing crude oil, at least temporarily, is in earthen tanks, and we see no reason why oils impounded upon the surface of water confined to the lands of the claimant are not as effectually within the possession and control as are those impounded in earthen tanks.·

[10] The Court of Civil Appeals correctly ruled that the trial court did not err in refusing to submit the defendants' requested special issue as to whether or not the erection and maintenance of plaintiffs' dam on Plummer's creek interfered with the rights of the defendants as the owner of the mineral lease upon said land. Conceding that such structures were a nuisance or otherwise did interfere with the defendants' rights in the operation of their lease, the utmost that could be said is, the defendants would have the right, if they could do so peaceably, to abate the nuisance or remove the obstruction, without resort to court, provided in doing so they would go no further than the necessity required and not commit any overt act to their individual profit or advantage, beyond the proper enjoyment of their lease rights. But under the undisputed evidence and the findings of the jury, the defendants have gone further and have made unnecessary personal gain to themselves by appropriating to their own use the impounded and escaping oil. In such a case the original act would not be excused ex necessitate rei, but rather would be attributed to the wrongful purpose to appropriate.

Nothing need be added to what the Court of Civil Appeals has well said upon this point. We find no error in the case, and the judgment of both courts, we think, should be affirmed; and we so recommend.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted; and will be entered as the judgment of the Supreme Court.