**FISHER COUNTY PIPE LINE CO. v.**
**SNOWDEN & McSWEENEY CO.**

No. 2040.

Court of Civil Appeals of Texas. Eastland.

Oct. 4, 1940.

Letcher D. King, of Abilene, for appellant.

Scarborough & Ely, of Abilene, for appellee.

GRISSOM, Justice.

Plaintiff, Snowden & McSweeney Company, recovered judgment against defendant, Fisher County Pipe Line Company, for $601.31. Defendant has appealed.

Plaintiff's original petition, omitting formal parts and allegations that both plaintiff and defendant were corporations and allegations as to their residence, was, in substance, as follows: That defendant built its pipe line into the territory where plaintiff owned some leases; that plaintiff gave defendant a pipe line connection and delivered oil to defendant from certain leases. Paragraph three is as follows: "This plaintiff would further show that this plaintiff discontinued making its oil runs to said pipe line and demanded payment for the oil already delivered to said Fisher County Pipeline Company and made demand upon said Fisher County Pipeline Company for the value of the oil already delivered. This plaintiff would show that three-fourths of the seven-eighths delivered to the defendant was owned unconditionally by this plaintiff and that the agreed price therefor made the total amount due for the oil so received to be the sum of $601.31, which though often requested the defendant herein has failed and refused to pay and still fails and refuses to pay, to the plaintiff's damage in the sum of $601.31, for which it here sues."

Wherefore plaintiff prayed judgment for its "debt", etc. Defendant filed a plea in abatement and, subject thereto, an answer consisting, among other things, of a general demurrer and allegations as follows: "That plaintiff and defendant entered into a written contract and agreement on or about the tenth of August, 1938, under the terms of which contract the plaintiff agreed to sell and the defendant agreed to purchase certain crude oil, which was being produced by plaintiff from its Sybil Howard Lease and Morrow Lease, both of said leases being located in the Rotal Oil Field, Fisher County, Texas; for all of which oil the defendant agreed to pay to the plaintiff herein the posted price of said crude oil delivered to it by the plaintiff at said above named leases, at the posted price for said crude oil as posted in that area, less the sum of ten cents per barrel; that the defendant did thereafter purchase said crude oil from the plaintiff which oil was produced from the above named leases."

There followed allegations to the effect that said written contract provided that before defendant would be obligated to pay for the oil delivered to it plaintiff would furnish an abstract "or other evidence of title" for defendant's examination so that defendant might determine whether or not plaintiff had title to the oil sold. That defendant had demanded abstracts and plain-

tiff had failed to furnish them. These were substantially the same allegations as contained in defendant's plea in abatement. Plaintiff answered by supplemental petition in which it alleged plaintiff and defendant entered into a contract whereby defendant agreed to buy the oil produced from plaintiff's leases and that defendant had waived any right it might have had to demand abstracts and had advised plaintiff that it did not desire to examine abstracts "since oil had been sold to other pipe lines prior to the time that the defendant started buying said oil and that since the requirements made by the other pipe line companies had been met, that this requirement would not be insisted on and the same were thereby expressly waived."

No ruling was had upon defendant's demurrer. The plea in abatement was overruled. The trial was to the court. At defendant's request the court filed findings of fact and conclusions of law, in part, as follows: (2) That plaintiff offered to satisfy defendant as to its title to the oil delivered, but defendant waived any requirement by agreeing to accept the division orders previously accepted by Onyx Refining Company. (3) That plaintiff delivered to defendant 964.51 barrels of oil at an agreed price of 95¢ per barrel. As its conclusions of law the court found, among other things, that defendant waived requirements relative to furnishing abstracts, and defendant was indebted to plaintiff in the sum of $601.30.

Only one witness testified. She testified that in June, 1938, arrangements were made with defendant for delivery of oil to it. That under the agreement defendant was to pay plaintiff for the oil delivered. That there was an agreement as to the price of the oil. That plaintiff owned three-fourths of seven-eighths of the oil delivered; that the amount of money now due plaintiff for the three-fourths of seven-eighths of the oil delivered was $601.31. Plaintiff introduced defendant's crude oil "purchase" tickets delivered by defendant to plaintiff showing delivery of 478.57 barrels of oil on June 20, 1938, and 485.94 barrels of oil on June 27, 1938. Relative thereto the witness further testified:

"Q. Did you have an agreed price on the oil? A. Yes.

"Q. From the figures you have there, of the amount furnished you by the Fisher County Pipeline Company, please state whether or not ¾ths of the ⅞ths amounted to $601.30? A. Yes.

\* \* \*

"Q. Have you yourself figured that, Mrs. Cummings? A. Yes.

"Q. Give us the method by which you arrived at it. A. The $601.30 is arrived at, by taking ¾ths of the ⅞ths of these two figures. Do you wish me to give that?

"Q. Yes. A. 485.94 barrels, and 478.57 barrels.

"Q. Does that show the barrels taken from the two leases and delivered to the Fisher County Pipeline Company? A. Yes sir. And of course ⅛th goes to the royalty owner, and ¼th of the remaining ⅞ths was due the people to whom we owed the oil payments.

"Q. You are not suing for that in this case? A. No. And the remaining ¾ths of the ⅞ths is arrived at by multiplying by 95¢ a barrel.

"Q. And that makes the $601.30? A. Yes Sir."

Plaintiff introduced a letter dated July 26, 1938, in which defendant advised plaintiff that defendant would not take any future oil runs from plaintiff's leases as it was withdrawing from the field. The letter contains the following statement: "In view of the fact that there is such a small amount of money involved in this transaction I have decided to forego the examination of your titles in order to determine who the proceeds from the sale of this oil should be paid to \* \* \*." Mrs. Cummings testified that at the time the oil was delivered to defendant it agreed to accept the division order given by plaintiff to Onyx Refining Company, to whom plaintiff had sold oil from said leases prior to the time of the sale to defendant. She testified that Onyx Refining Company had accepted oil from the leases; that plaintiff had complied with all their requirements; that defendant's representative advised " \* \* \* that he did not wish to examine the abstracts but would accept the Onyx Refining Company division order to make payments." On August 15, 1938, plaintiff mailed to defendant division orders containing the following provision: "Satisfactory abstract or other evidence of title will be furnished you as of the effective date hereof, and at any time thereafter when demanded by you." Plaintiff did not furnish abstracts of title in compliance with defendant's demand of

January 24, 1939. Relative to this demand the witness testified:

"Q. State whether or not that's the first time any demand had been made on you to furnish abstracts of title? A. It was.

"Q. How long had operations out there been discontinued? A. From June 28th, 1938 to January 24th, 1939."

The witness testified that she furnished defendant with copies of the division orders executed by plaintiff to Onyx Refining Company, and that defendant agreed to accept them.

Relative to the waiver the witness further testified:

"Q. All right. In addition to this correspondence that you have, what oral conversations or dealings did you have with Mr. King, as to furnishing him abstracts of title? A. I talked to Mr. King over long distance, and he told me very specifically that inasmuch as the pipe line was terminated, it would be of no further use, and he didn't care to go to the expense of examining the abstracts, and he would accept the title as given him by us, and we did that. We co-operated with him in every way.

* * *

"Q. At that time, did he make any demand for title opinions or abstracts? A. He didn't.

"Q. State whether or not he specifically said anything about it? A. He did. He said he didn't wish them.

"Q. Did you rely upon that? A. Yes sir.

"Q. Is that why you didn't furnish them? A. Yes sir.

* * *

"Q. What was the conversation that you had with Mr. King, about the Division Orders that had already been furnished the Onyx Refining Company? A. Mr. King told me, that inasmuch as he was not going to continue his operations in that locality, and being unable to take any more oil, that he would take the Division Orders that had been furnished to the Onyx Refining Company, in order to make payment.

* * *

"Q. Mrs. Cummings, I will show you plaintiff's exhibits 'EE' and 'FF', and ask you if those instruments are the Division Orders that you were talking about, obtained from the Onyx Refining Company, or that you furnished the Onyx Refining Company? A. Yes sir.

"Q. Did you have any discussion with Mr. King about these particular Division Orders? A. Copies of these were the ones he agreed to accept.

"Q. To accept them. * * * What reason, if any, did he give you for accepting them? A. So that he could make payment for the oil that he had run, without going to the trouble and expense of having abstracts examined for himself.

* * *

"A. The only demand on us—the oil was run June 20, 1938, and time after time we had demanded payment to be made; we made one request after another on Mr. King. In January, of the following year, after he had refused to pay it, he then demanded abstracts of title."

Appellant contends plaintiff's petition is so defective that it will not support the judgment.

In Southern Cas. Co. v. Morgan, Tex. Com.App., 16 S.W.2d 533, the court said: "General demurrer was pleaded, but it was not presented and given disposition. Hence, it was waived. Indiana & Ohio Live Stock Ins. Co. v. Smith (Tex.Civ. App.) 157 S.W. 755, and cases therein cited. The question (of insufficiency of the petition) is raised after verdict and judgment, and, so, at a time when all that is possible must be presumed in aid of the pleading (see Schuster v. Frendenthal, 74 Tex. 53, 11 S.W. 1051)."

In City of San Antonio v. Bodeman, Tex.Civ.App., 163 S.W. 1043, 1045, writ refused, the court said: "It is plainly deducible from the cases decided by our Supreme Court that said court has always been of the opinion that when the sufficiency of the petition is questioned for the first time after verdict more liberal rules should be applied in passing on the same than are laid down for testing the pleading when the demurrer is interposed and urged at the proper time. * * * The modern tendency is toward greater liberality in the construction of pleadings in order not to require the retrial of a case when justice has been done, and the parties understood what the points in issue were, and the same were submitted to a court or jury."

The following authorities are to the same effect; they clearly demonstrate that the trend of the modern decisions is to liberalize the requirements relative to pleadings under the situation disclosed by this record: Panhandle Grain & Elevator Co. v. Dowlin, Tex.Civ.App., 247 S.W.

873; Commerce Farm Credit Co. v. Ferguson, Tex.Civ.App., 47 S.W.2d 879; Rhoads v. Bonner, Tex.Civ.App., 49 S.W.2d 502, 505; Northern Texas Traction Co. v. Polytechnic, Tex.Com.App., 236 S.W. 73; Coleman Nat. Bank v. McDonald, Tex.Civ. App., 286 S.W. 487; Universal Credit Co. v. Vance, Tex.Civ.App., 117 S.W.2d 508, 511; Jones v. Womack-Henning & Rollins, Tex.Civ.App., 53 S.W.2d 635; Ferguson v. Conklin, Tex.Civ.App., 51 S.W.2d 622, 624; Phœnix Ins. Co. v. Boren, 83 Tex. 97, 98, 18 S.W. 484; Thomas v. Bonnie, 66 Tex. 633, 2 S.W. 724; Gulf, C. & S. F. R. Co. v. Anderson, 76 Tex. 244, 252, 13 S.W. 196; Clem Lumber Co. v. Elliott Lumber Co., Tex.Com.App., 254 S.W. 935, 936; Dowlin v. Boyd, Tex.Com.App., 291 S. W. 1095, 1097.

In Humphreys Oil Co. v. Liles, Tex. Com.App., 277 S.W. 100, 102, opinion by Judge Speer, the Court said:

"No exception is urged to this petition, and the attack, of course, comes after verdict. In such cases a very liberal construction of the pleadings will be indulged; so much so that every fair implication will be allowed to deduce from the actual language of the pleadings the necessary fact or facts to support the judgment. Schuster v. Frendenthal, 74 Tex. 53, 11 S.W. 1051.

"In testing the petition upon general demurrer the rule is, a liberal construction supplying every fact that may be reasonably inferred from the language used, and even more so after verdict, is the pleading favored."

In Texas Emp. Ins. Ass'n v. Marsden, 131 Tex. 256, 114 S.W.2d 858, the insurance carrier of a compensation claimant under the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., filed no answer to plaintiff's petition. The case was tried, evidence introduced and issues submitted as if issues had been joined on the allegations of plaintiff's petition by the filing of an answer. The Supreme Court held the answer was waived.

■ Appellant says plaintiff's petition is wholly insufficient to sustain the judgment. The question of insufficiency of the petition being raised after verdict and judgment, when it is too late for amendment, "all that is possible must be presumed in aid of the pleading." Southern Cas. Co. v. Morgan, Tex.Com.App., 16 S. W.2d 533. "* * * when the sufficiency of the petition is questioned for the first time after verdict more liberal rules should be applied * * * than are laid down for testing the pleading when the demurrer is interposed and urged at the proper time. * * *" City of San Antonio v. Bodeman, Tex.Civ.App., 163 S.W. 1043, 1045, writ refused. "In testing the petition upon general demurrer the rule is, a liberal construction supplying every fact that may be reasonably inferred from the language used, and even more so after verdict, is the pleading favored." Humphreys Oil Co. v. Liles, Tex.Com.App., 277 S.W. 100, 102.

Throughout the trial the parties and the court apparently treated the pleadings as sufficiently stating a cause of action; no objection was made to testimony on the ground that it was not supported by pleadings; the case was fully developed on its merits; appellant was not misled or surprised and the justice of the case appears to have been reached. See Dowlin v. Boyd, Tex.Com.App., 291 S.W. 1095; Coleman Nat. Bank v. McDonald, Tex.Civ. App., 286 S.W. 487; Lipscomb v. Adamson Lumber Co., Tex.Civ.App., 217 S.W. 228.

If it be assumed that the petition is subject to a general demurrer, the presumption is that if it had been urged the court would have sustained it, and plaintiff would have filed an amended petition. But, applying the very liberal rules of construction hereinbefore stated, which have the approval of our Supreme Court, we are of the opinion that the judgment is not without requisite support. Townes' Texas Pleading, 2d Ed., 405.

However, we are further of the opinion that giving effect to the established rule that every reasonable intendment must be indulged in favor of the pleading the petition is not subject to a general demurrer. Chipley v. Smith, Tex.Com.App., 292 S.W. 209.

■ Relative to the evidence we think it is sufficient to show a sale and delivery, in June, 1938, to defendant of 964.51 barrels of oil at 95¢ per barrel, plaintiff's part of which amounted to $601.30. On the merits of the case the evidence presented the disputed question whether plaintiff had the right to demand payment without furnishing defendant abstracts showing title in plaintiff. Stated differently, the question was whether the sale of oil was under an oral or written contract, and, if written, whether defendant waived its right thereunder to demand abstracts. Defendant relies upon the division orders mailed by

plaintiff to defendant August 15, 1938 to show a sale under a written contract, and plaintiff's failure to comply therewith, in that plaintiff had not furnished abstracts showing title in plaintiff. These division orders were executed long after sale and delivery of the oil, and after payment therefor was due. At the time the division orders were signed the contract testified to by plaintiff's witness was fully executed by all parties, with this single exception, defendant had not paid for the oil.

Plaintiff's testimony is to the effect that there was an oral contract of sale made in June; the oil was delivered in June; that defendant agreed to accept copies of division orders formerly furnished by plaintiff to Onyx Refining Company, and under which it had made payment. That copies of such division orders were furnished defendant and it accepted them and promised to make payment thereunder. Defendant's letter to plaintiff of July 26th stating that defendant would not take further oil runs from plaintiff's leases since it was withdrawing from the field, and stating that defendant had "decided to forego the examination of your title", evidently did not have reference to the written contract relied on by defendant, to-wit, the division orders executed thereafter on August 15th. Whether or not it had reference to such a custom can only be surmised. But, it is undisputed that the first demand for abstracts was made in defendant's letter dated January 24, 1939, seven months after delivery of the oil, six months after payment was due and after plaintiff had requested payment many times. Even then abstracts were demanded, according to defendant's letter, not because defendant was fearful of plaintiff's title, but because its managing officer was displeased with the fact that plaintiff's representative had conversed with his secretary in his absence and taken an attitude not to his liking. From all of which it may be inferred that in his absence plaintiff had been very insistent upon payment.

We think the court's findings that defendant was indebted to plaintiff in the sum of $601.31, and that defendant waived its right (if it ever existed) to demand abstracts, find support in the testimony.

■ Under such circumstances we think it is not shown as a matter of law that there was a merger of the parol agreement, testified to by plaintiff, in the division orders of August 15th, the written contract upon which defendant relies.

"An oral agreement is merged in a subsequent written one only where the oral agreement is executory on both sides. A new agreement, although reduced to writing, does not necessarily as a matter of law show that a former verbal agreement under which rights have already vested is rescinded or merged in the new bargain. That an oral contract was merged into a written one does not affect a party's right to recover damages for a breach of the oral contract while it was in force. When damages have accrued through breach of a verbal agreement, and there is no waiver or disclaimer of such breach in a subsequent writing, an action will lie on the verbal agreement, notwithstanding the subsequent writing." 13 C.J., Contracts, § 616, p. 598.

Also see: 17 C.J.S., Contracts, § 381, p. 875; 12 Am.Jur. 994; Stone v. Morrison & Powers, Tex.Com.App., 298 S.W. 538, 539; Cotulla v. Barlow, Tex.Civ.App., 115 S.W. 294, 297; Kahn v. Ilitzky, Tex.Civ. App., 107 S.W.2d 1015, 1016, writ dismissed; El Paso & S. W. R. Co. v. Harris & Liebman, Tex.Civ.App., 110 S.W. 145, 148, writ refused; Texas & P. Ry. Co. v. Avery, Tex.Civ.App., 46 S.W. 897, 899, writ refused.

■ If plaintiff's testimony is believed, the only consideration for the execution of the division orders of August 15th was defendant's promise to pay, a thing which defendant was already bound to do under its oral contract and, therefore, the said writings were without consideration. Stone v. Morrison & Powers, supra.

We have carefully considered all of appellant's assignments. We think reversible error is not shown.

The judgment is affirmed.